IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

AMY T.,

                    Plaintiff,

          v.                                    Civil Action No.
                                                5:20-CV-0910 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                        STEVEN R. DOLSON, ESQ.
STEVEN R. DOLSON
126 North Salina Street, Suite 3B
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                TIMOTHY SEAN BOLEN, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

---

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, ineligible for the supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.     BACKGROUND

Plaintiff was born in January of 1981, and is currently forty years of age.  She was thirty-seven years old at the time of her application for benefits in December of 2018.  Plaintiff's height has been noted to be five feet and one inch or five feet and two inches, and she weighed between approximately one hundred and twenty-nine and one hundred and forty-five pounds during the relevant time period.  Plaintiff is not married, but is in a relationship and currently lives in Dexter, New York, with her significant other, her two teenage children, and her significant other's teenage son.

In terms of education, plaintiff is a high school graduate, and while in school received some special education assistance.  Plaintiff last worked at a delicatessen preparing food and sandwiches, but stopped working

2

because of her migraine headaches.

Physically, plaintiff alleges that she suffers from migraine headaches, fibromyalgia, lower back pain, arthritis, chronic neck pain, and chronic obstructive pulmonary disorder ("COPD").  She also reportedly had seizures as a child, but had not had one recently until July of 2019.  As a result of that most recent seizure, plaintiff suffered a fracture of her left wrist.  During the relevant time period, plaintiff received treatment consisting of Botox injections and medications from Dr. Abdul Latif at North Country Neurology, various sources at North Country Family Medicine and North Country Orthopedic Group, and emergency treatment related to her seizure from Samaritan Medical Center.

Mentally, plaintiff alleges that she suffers from depression and anxiety, primarily attributed to family stressors and the death of her father in 2009.  Plaintiff has received mental health treatment consisting of medication and therapy with sources at Carthage Behavioral Health, although she was discharged from treatment at that facility in January 2019 after having attained her treatment goals.  Plaintiff testified at the hearing that she does not need mental health counseling at this time.

Plaintiff has reported that she receives Botox injections for her migraines every three months and that those initially make her headaches

worse, but then slowly work.  When she experiences a migraine, she takes an Imitrex injection and sleeps for three or four hours, after which the migraine has subsided.  Plaintiff stated that she experiences six migraines daily but that she uses Imitrex injections only two or three times per week. She had a stroke the first time she experienced one of her migraine headaches.

In terms of daily activities, plaintiff can clean dishes with the aid of a dishwasher as long as she can take breaks, and takes brief trips to the store once or twice each week, where she shops utilizing a motorized ride-on cart.  She can make easy meals and does limited household chores, but leaves the house only for doctor's appointments and to pay bills.  Plaintiff has no problems with personal care tasks, and her hobbies include watching television and having friends visit her.  She does not do laundry because that would require her to go up and down stairs.

II.   PROCEDURAL HISTORY

A.   Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on December 5, 2018.  In support of that application, she alleged a disability onset date of January 3, 2018, and claimed to be disabled based on impairments which include irritable bowel syndrome,

migraine headaches, a major depressive disorder, an anxiety disorder, arthritis, fibromyalgia, degenerative disc disease, asthma, COPD, and nerve damage on the left side of her body.

A hearing was conducted by video on September 3, 2019, by ALJ Jeremy G. Eldred, to address plaintiff's application for benefits. ALJ Eldred issued an unfavorable decision on September 24, 2019. That opinion became a final determination of the agency on June 30, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.     The ALJ's Decision

In his decision, ALJ Eldred applied the familiar, five-step sequential test for determining disability. At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period. Proceeding to step two, ALJ Eldred found that plaintiff suffers from a single severe impairment that imposes more than minimal limitations on her ability to perform basic work functions – migraine headaches. The ALJ found that plaintiff's alleged mental impairments, COPD, seizure disorder, and fractured left wrist are not severe as that term is defined in the relevant statute and regulations, and that her fibromyalgia and degenerative disc disease/myofascial pain in her neck and lower back are not medically

determinable impairments.

At step three, ALJ Eldred examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listing 11.02.

ALJ Eldred next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of light work,[2] with the following restrictions:

> she can climb ladders, ropes, or scaffolds no more than occasionally; can climb ramps or stairs no more than frequently; can stoop no more than occasionally; and can balance, kneel, crouch, or crawl no more than frequently.

---

[2]   By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

ALJ Eldred proceeded to step five of the sequential evaluation without making findings at step four pursuant to the expedited process set forth in 20 C.F.R. § 416.920(h), due to the lack of sufficient vocational information in the record to establish whether plaintiff could perform any of her past relevant work.  In making his finding at step five, the ALJ consulted a vocational expert regarding how plaintiff's limitations impact the occupations she can perform, and concluded based on the vocational expert's testimony that plaintiff remains able to perform available work, citing as representative examples the positions of mail clerk, small products assembler, and photocopy machine operator.  Based upon these findings, ALJ Eldred concluded that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on August 12, 2020.[3]  In support of her challenge to the ALJ's determination, plaintiff contends that the ALJ failed to properly assess her subjective reports using the two-step analysis required by the regulations, in that the ALJ did not show that he considered the relevant factors related to determining whether those subjective reports

---

[3]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

should be credited.  Dkt. No. 11.

Oral argument was conducted in this matter, by telephone, on December 21, 2021, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.

8

*Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.   Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

9

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an

impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   <u>Analysis</u>

   1.   <u>ALJ Eldred's Evaluation of Plaintiff's Subjective
        Complaints</u>

Plaintiff's sole raised objection to the ALJ's decision is her argument

that the ALJ failed to properly assess her subjective reports of pain and

limitations.  Dkt. No. 11.  She contends that the ALJ so egregiously failed to

document whether he considered her subjective reports in the manner

required by the regulations that it is impossible to review whether his

finding in that regard is based on an application of the correct legal

standard and supported by substantial evidence.  Plaintiff's argument is

unpersuasive.

Under the two-step review protocol applicable in social security cases

for assessing a claimant's subjective reports of symptoms, an ALJ must

first determine whether the individual has a medically determinable

impairment that could reasonably be expected to produce the alleged

symptoms, and, if so, the ALJ must then evaluate the intensity and

persistence of those symptoms and determine the extent to which those

symptoms limit the claimant's ability to perform work-related activities.

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8.  When

addressing this second prong, an ALJ must consider the objective medical

evidence and other evidence in the record, including statements by the

claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors.  *Id.*

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence.  *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, provided that it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms.  *See Cichocki*

*v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

Although he did not explicitly state that plaintiff's medically determinable impairments, most prominently her migraine headaches, could reasonably be expected to cause her alleged symptoms, it is plainly evident from his decision that he viewed plaintiff's migraine headaches as having the potential to do so, particularly given that he proceeded to assess whether the intensity, persistence, and limiting effect of her medically determinable impairments were consistent with the record evidence.  Other statements in the decision also support that the ALJ properly applied the two-step analysis.  The ALJ found that plaintiff had a severe medically determinable impairment of migraine headaches.  Administrative Transcript ("AT") at 15.[4]  He recited the two-step protocol for assessing a claimant's subjective complaint, recognizing that he was required to first determine

---

4        The Administrative Transcript, found at Dkt. No. 10, will be cited as "AT __."

14

whether there was an underlying medically determinable impairment that could be reasonably expected to produce plaintiff's symptoms before assessing the intensity, persistence, and limiting effects of those symptoms.  AT 19.  Immediately following that recitation, the ALJ again noted that plaintiff experienced migraine headaches and discussed the medical evidence related to the treatment of that impairment, including her reports of symptoms such as headaches, nausea, photophobia, phonophobia, and intermittent dizziness; he also discussed how plaintiff alleged her migraines and other nonsevere impairments limited her in terms of both work functioning and performance of activities of daily living. AT 19-21.  The ALJ then specifically noted that "many of the claimant's subjective complaints are based on medical conditions that have not been established as medically determinable 'severe' impairments."  AT 21.  The ALJ additionally stated that "all of the specific symptomology alleged by the claimant . . . have been duly considered by me in accordance with Social Security Ruling 16-3p," and that "[i]n formulating a residual functional capacity for the claimant during the period under consideration, moreover, I have accounted for any functional deficits attributable to the claimant's pain and other symptoms."  AT 21-22.

Based on the ALJ's decision as a whole, although he did not explicitly

state that he found plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, it is clear that he was both aware of that relevant legal standard and made such a finding, particularly given that he continued to assess in detail whether her reports of symptoms related to her migraines in particular were consistent with the other evidence in the record.

This case is distinguishable from *Meadors v. Astrue*, 370 F. App'x 179 (2d Cir. 2010), a case relied upon by the plaintiff.  In *Meadors*, the Second Circuit Court of Appeals found error in the ALJ's failure to make clear whether he applied the correct legal principles, noting that the ALJ's decision left the court "unable to discern whether the ALJ found that: (1) Appellant's contentions of pain are not reasonably consistent with those medical conditions from which she suffers; or (2) Appellant's contentions of pain are *consistent* with those medical conditions, but the intensity and persistence she identifies are unsubstantiated and her subjective allegations alone are not credible."  *Meadors*, 370 F. App'x at 184 (emphasis in original).  In this case, the ALJ's discussion throughout the decision allows a reviewer to discern that he found her contentions reasonably consistent with her medically determinable impairments, but that ultimately the alleged intensity, persistence, and limiting effects of

16

those impairments was not supported.  Although the Second Circuit in *Meadors* remanded with instructions to make an "express finding" regarding the first step of the relevant analysis, I do not read *Meadors* as requiring an express statement in every case so long as it is possible for the court to review whether the ALJ's findings are based on application of the appropriate legal standard and supported by substantial evidence.  *See Brian C. v. Comm'r of Soc. Sec.*, 20-CV-0534, 2021 WL 1946503, at *3-4 (N.D.N.Y. May 14, 2021) (Stewart, M.J.) (finding the ALJ considered whether plaintiff's impairments could reasonably cause his alleged symptoms because he noted the relevant medically determinable impairments and discussed how the medical imaging corroborated those impairments, stating that "[a]lthough the ALJ may have failed to use the exact language typically employed by ALJs . . . , it is clear from his decision that he found that Plaintiff had medically determinable impairments that could be reasonably expected to produce the pain alleged").  As was discussed above, it was the inability to glean the ALJ's finding or whether he applied the proper standard that formed the basis for the remand in *Meadors*, not the failure to explicitly state such findings.  Because the ALJ's decision makes it sufficiently apparent that he properly applied the two-step analysis when assessing plaintiff's subjective reports, plaintiff's argument to

the contrary must be rejected.

Turning to the ALJ's analysis of the intensity, persistence, and limiting effect of those symptoms, plaintiff herself acknowledges that the ALJ declined to rely on her alleged symptoms in part based on the fact that her reported daily activities were inconsistent with the level of limitation that she otherwise alleged, as well as the fact that Botox injections provided some relief from her migraine headaches.  Dkt. No. 11, at 9.  While these are both valid reasons that could sustain a finding regarding subjective complaints, they are but two of the reasons cited by the ALJ.  ALJ Eldred also noted that (a) plaintiff reported that her headaches resolved in one or one-and-a-half hours after taking Tylenol or Imitrex, (b) plaintiff reported that taking an Imitrex shot and sleeping for three or four hours resolved her headaches, and (c) there was an inconsistency between plaintiff's report at the hearing that she had six migraines per day and her reports to physicians that Botox reduced her migraines to approximately two per week.  AT 19-22.  These facts are inconsistent with plaintiff's alleged level of incapacitation.  ALJ Eldred also discussed how plaintiff's reports of dizziness, vomiting, photophobia, phonophobia, and other symptoms were not supported by the objective medical evidence.  *Id.*  The ALJ therefore explicitly considered most, if not all, of the factors listed in SSR 16-3p when

discussing the basis for his finding regarding plaintiff's subjective complaints.  I therefore find that the ALJ applied the appropriate legal standard when assessing those subjective complaints and provided sufficient explanation from which his finding can be assessed by the court under the substantial evidence standard on review.

As to plaintiff's argument that the ALJ should not have relied on plaintiff's reported daily activities because her ability to perform limited chores and child care do not show that she is capable of performing full-time work, I reject that argument.  The ALJ did not rely on these reported activities to show that plaintiff could perform full-time work at the level of the RFC, but rather to demonstrate that plaintiff was not as debilitated by her medically determinable impairments as she otherwise alleged.  The finding regarding plaintiff's daily activities was also not made in isolation, but rather in combination with consideration of the medical evidence and reports plaintiff made to her treatment providers that contradict her allegations of greater debilitation as part of her application for benefits.  Such an analysis is entirely proper and consistent with the governing regulations.  *See Honora F. v. Comm'r of Soc. Sec.*, 20-CV-0548, 2021 WL 4477091, at *6 (N.D.N.Y. Sept. 30, 2021) (Dancks, M.J.) (finding that the ALJ's consideration of daily activities such as caring for children, performing self-

care, cleaning, doing laundry with assistance, shopping, attending church, and driving was appropriate as part of an assessment of whether the plaintiff's subjective complaints were consistent with the record).

Because the ALJ applied the correct legal standard and provided multiple valid reasons based in the evidence for declining to rely on plaintiff's subjective reports, I conclude that this finding is supported by substantial evidence, and plaintiff's argument must be rejected.

### 2.   Unraised Issues

Although plaintiff raised only the ALJ's evaluation of her subjective complaints as a basis for finding error, I find it appropriate to discuss two other points.

First, I note that, in a treatment note dated October 11, 2018, mental health counselor Theresa Lampack indicated that, based on her examination, plaintiff appeared to have a mild impairment in her ability to make reasonable decisions.  AT 300-01.  Under the new regulations that are applicable to this case based on the date plaintiff's application for benefits was filed, an ALJ must consider all opinions provided by any medical source and articulate in their decision how persuasive they find such opinions.  20 C.F.R. § 416.920c.  The ALJ does not appear to have discussed this assessment of plaintiff's functioning.  I find, however, that

this omission is at most harmless error and does not require remand.

Specifically, Counselor Lampack's assessment of a mild impairment is

entirely consistent with the ALJ's finding at step two that plaintiff's mental

impairment is not severe.  *See Rookey v. Comm'r of Soc. Sec.*, 14-CV-

0914, 2015 WL 5709216, at *2 (N.D.N.Y. Sept. 29, 2015) (Sharpe, J.)

(noting that a rating of "mild" or better in the functional areas of the

psychiatric review technique are generally consistent with a finding that a

mental impairment is not severe) (quoting *Kohler v. Astrue*, 546 F.3d 260,

266 (2d Cir. 2008)); *see also Robin E. v. Comm'r of Soc. Sec.*, 18-CV-

1112, 2020 WL 1063094, at *3 (N.D.N.Y. Mar. 5, 2020) (Sharpe, J.) (finding

the ALJ's step two finding of non-severe mental impairments to be

supported by substantial evidence where the ALJ concluded the plaintiff

had no more than mild limitations).  The ALJ based this finding on the

opinions of consultative examiner Dr. Noia and the two state agency

nonexamining physicians, all of whom opined that plaintiff had no more

than mild limitations in any area of mental functioning.  AT 16-18.  Because

Counselor Lampack's opinion is therefore consistent with the ALJ's

findings, any failure to specifically discuss or weigh it is harmless at best.

*See Fiducia v. Comm'r of Soc. Sec.*, 16-CV-1317, 2017 WL 4513405, at *5

(N.D.N.Y. Oct. 10, 2017) (Suddaby, C.J.) (noting that "failure to consider or

weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome") (collecting cases).

Second, the ALJ found that plaintiff's back and neck pain were labelled as "myofascial pain," but that pain was merely a symptom and therefore could not be considered to constitute a medically determinable impairment.  I agree that the sources who assessed plaintiff's neck and back pain did not provide specific underlying diagnoses for that pain, but note that treatment records from North Country Family Medicine contain indications that plaintiff underwent magnetic resonance imaging ("MRI") testing of her lower back in 2014 that showed "mild [degenerative disc disease]."  AT 359.  It is not clear that the ALJ adequately considered this notation when determining whether plaintiff's alleged lower back impairment constituted a medically determinable impairment.  However, as with the failure to weigh Counselor Lampack's mental assessment, I find that any such error is necessarily harmless.  Despite finding that plaintiff's migraines were her only severe impairment, the ALJ limited plaintiff to the performance of light work with frequent balancing, kneeling, crouching, crawling and climbing ramps and stairs, and occasional stooping and climbing ladders, ropes, and scaffolds.  AT 19.  These limitations were drawn from the opinions of the two state agency medical consultants, Dr. J.

Poss and Dr. A. Saeed, whose opinions the ALJ found to be persuasive.

AT 22.  Both Dr. Poss and Dr. Saeed included degenerative disc disease

as a listed severe impairment when formulating their opinions.  AT 85, 97.

Plaintiff does not argue that reliance on these opinions – or the ALJ's

assessment of the RFC, as a general matter, apart from failing to account

for her subjective reports of greater limitations – was in any way erroneous,

and careful review of the record assures me that the ALJ's finding related

to these opinions is supported by substantial evidence.  Because their

opinions explicitly included a consideration of the functional effects of

plaintiff's degenerative disc disease, the ALJ's failure to find that

impairment to be a medically determinable impairment, to the extent that

the failure is error, is harmless error.  *See Waldvogel v. Comm'r of Soc.*

*Sec.*, 16-CV-0868, 2017 WL 3995590, at *6 (N.D.N.Y. Sept. 11, 2017)

(Suddaby, C.J.) (finding failure to find carpal tunnel syndrome severe at

step two was harmless error where the ALJ considered evidence of that

impairment at the later steps of the sequential evaluation and the evidence

did not show that greater restrictions were warranted as a result of that

impairment).

IV.    SUMMARY AND ORDER

    After considering the record as a whole and the issues raised by the

plaintiff in support of her challenge to the Commissioner's determination, I

find that the Commissioner's determination resulted from the application of

proper legal principles and is supported by substantial evidence.

Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings

(Dkt. No. 13) be GRANTED, plaintiff's motion for judgment on the pleadings

(Dkt. No. 11) be DENIED, the Commissioner's decision be AFFIRMED, and

plaintiff's complaint be DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      December 22, 2021          _____
            Syracuse, NY               DAVID E. PEEBLES
                                       U.S. Magistrate Judge